UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Nathaniel Geathers, | ) | C/A No. 5:14-1750-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin, Acting Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). The issues before the court are whether the Commissioner's findings are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

I.  Relevant Background

   A.   Procedural History

On December 1 and 3, 2010,[1] Plaintiff protectively applied for DIB and SSI under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383c. Tr. 124-34. He alleged a disability onset date of November 18, 2010. Tr. 124, 128. Plaintiff's applications were denied initially on

---

[1] Although the Application Summaries indicate application dates of December 3, 2010, for both DIB and SSI, the Disability Determination and Transmittals indicate the filing date for SSI was December 1, 2010, and the filing date for DIB was December 3, 2010. Tr. 76, 78.

May 18, 2011, Tr. 76-79, and upon reconsideration on July 15, 2011, Tr. 80-83. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 98-99. The administrative hearing was held on October 16, 2012, Tr. 32-75, and on November 9, 2012, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the Act, Tr. 15-26. The Appeals Council denied Plaintiff's request for review on February 25, 2014. Tr. 1-3. Thus, the ALJ's decision became final and this case is ripe for judicial review pursuant to 42 U.S.C. § 405(g). Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on April 30, 2014. ECF No. 1.

      B.      Plaintiff's Background

Plaintiff was born on January 26, 1952, and was 58 years old as of his alleged onset date and 60 years old at the time of the ALJ's decision. Tr. 147. He did not complete high school, and he worked as a truck driver and forklift operator and unloader. Tr. 162. Although Plaintiff stopped working on November 18, 2010. Tr. 161. Plaintiff believed his conditions became severe enough on that same date to keep him from working. *Id.* Plaintiff indicated the conditions that limited his ability to work included back pain, neck pain, leg pain, and "upper left shoulder crack." *Id.*

      C.      The Administrative Proceedings

            1.      Plaintiff's Hearing Testimony

Plaintiff appeared with counsel and testified at his administrative hearing on October 16, 2012. Tr. 32. Plaintiff testified that he was 60 years old, separated from his wife, and lived alone. Tr. 38. Plaintiff stated that he completed the fourth grade, and started the fifth grade but did not finish. *Id.* Plaintiff testified he did not obtain a GED [general equivalency diploma], and although he completed a training course to become a heavy equipment operator, he has never worked as a heavy equipment operator. Tr. 39. Plaintiff testified that he could read "some" of a

newspaper, but that he had someone read the hearing notice to him. *Id.* Plaintiff stated he could write more than his name and address. Plaintiff testified that he possessed a driver's license and drove to the hearing although he stopped twice to rest because his back hurt. Tr. 40-41. Plaintiff stated he drives to a Wal-Mart located a mile from his home "once a week" and may visit relatives in Charleston once a month. Tr. 41. Plaintiff testified he is able to dress and take care of personal hygiene, he does not cook from "from scratch" but is able to reheat meals his daughter prepared, and he is able to grocery shop. Tr. 42. Plaintiff stated that his daughters help with laundry and housecleaning chores, but he is able to take out the trash because his garbage is "light." Tr. 43. Plaintiff testified that he hires someone to take care of his yard. *Id.*

Plaintiff testified that he last worked at Franco Manufacturing. Tr. 43. When first hired he was "docking trailers" but after his back began bothering him he worked pushing down boxes "to the guys on the line, so they could take [them] off." Tr. 44. Plaintiff stated he worked at Franco for about two years but after getting into an altercation with a co-worker he was terminated in October 2010. *Id.* Plaintiff stated he has not worked anywhere else since getting fired from Franco although he applied for other jobs. *Id.* Plaintiff testified that he applied for and received unemployment benefits, and as of the hearing he was still receiving unemployment benefits of $229 per week after taxes. Tr. 45.

In response to questions from his counsel, Plaintiff testified that when he sought work he "was trying to get some light-duty work" such as stocking shelves. Tr. 47. Plaintiff stated that he could carry about 25-to-30 pounds. *Id.* Plaintiff testified that when he continued to try and carry that amount of weight it would cause him pain in the "low part of [his] back and [his] neck." Tr. 48. Plaintiff testified that when he bends over "[t]hat's when it really hurts. Sometimes [he] can't move for three or four days." *Id.* In describing his back pain Plaintiff testified that "the hard pain comes and goes" but at the time of the hearing he was experiencing "minor pain." *Id.* Plaintiff

3

stated he puts "rubbing ointment on [his] back to try to ease the pain." *Id.* Plaintiff stated he has "pains that run down [his] neck and [his] back." Tr. 49. He testified the pain sometimes "hits [his] right leg, because this right leg has been in a cast for six months." *Id.* Plaintiff stated his leg was in a cast about two-and-a-half years ago, but after further questioning from the ALJ Plaintiff clarified he was in a leg brace. Tr. 49-50. Plaintiff testified he could walk about two-and-a-half blocks before needing to rest, could stand for five or six minutes, and sit about 15-to-20 minutes. Tr. 50-51. Plaintiff stated he could lift between 15-to-20 pounds. Tr. 52.

Plaintiff testified that twisting his neck made the pain worse and to relieve the pain he takes over-the-counter medication, keeps his neck in one position, and tries to rest. Tr. 52. Plaintiff stated that doctors were considering putting a rod in his back but he did not want to have surgery. *Id.* Plaintiff stated he did not do any type of home exercises or physical therapy for his neck or back, but he does a home remedy of hot baths with Epsom salts that helps "[a] little." Tr. 53.

When asked by his counsel about his mental health issues Plaintiff testified that he "hallucinate[s] sometimes." Tr. 53. Plaintiff stated that he was told he was suicidal but he does not like to discuss it because "it makes [him] sad." *Id.* Plaintiff confirmed that he was told he suffers from depression, panic disorder, PTSD, and has a psychotic disorder. Tr. 54. Plaintiff stated he does not like to be around crowds, has problems with his memory, and his ability to focus is "in and out." *Id.* Plaintiff did not want to elaborate further on his mental health issues. Tr. 54-55.

In describing his typical day Plaintiff stated he wakes up around 4:30 or 5:00, has breakfast from the microwave, and then goes outside to tend to his rabbits and dogs. Tr. 55. Once back in the house he will "probably take a quick shower and walk around." *Id.* He sometimes calls his neighbors to help with his yard, and he watches television. *Id.* Plaintiff stated he

4

sometimes does not eat lunch, or he may eat fast food, or his friends will give him something. Tr. 56. Plaintiff stated his daughter may bring him dinner and after dinner he sits on the couch or goes back outside to check on his dogs. *Id.* Plaintiff testified he takes a two-to-three hour nap every day. *Id.*

The ALJ asked Plaintiff if he was currently a patient of any psychologist, psychiatrist, or mental health clinic. Tr. 58. Plaintiff responded that he "used to go to the mental health clinic" but was last seen in October 2011. *Id.* Plaintiff explained a September 2011 charge of disorderly conduct when an officer approached him one night when he was walking near his home and he was arrested for "loudness." Tr. 59. Plaintiff indicated the charge was dismissed. Tr. 60. The ALJ asked Plaintiff about an incident that occurred approximately one month later when Plaintiff was taken to the emergency room and then hospitalized for one day after threatening to harm himself and others. *Id.* Plaintiff stated that "they lied on [him]." *Id.*[2]

Plaintiff said he was being treated for his back and neck until he ran out of funds. Tr. 62-63. Plaintiff testified he was not currently taking any kind of prescription medication for pain. Tr. 69. He also stated he was not taking any medication for mental health issues because the pills he was given make him "feel funny and high." *Id.* Plaintiff's counsel confirmed that none of Plaintiff's treating sources have imposed any kind of physiological or mental limitations on Plaintiff's activity. Tr. 70. Other than one overnight stay in September 2011, Plaintiff stated he was never hospitalized for a week or longer because of depression or anxiety. Tr. 70-71.

2.      Vocational Expert ("VE") Testimony

Robert E. Brabham, Jr., testified as the VE at Plaintiff's administrative hearing, and described Plaintiff's past work as a delivery driver as semiskilled, generally performed at the

---

[2] Records indicate that Plaintiff was admitted to Marlboro Park Hospital on September 29, 2011, based on an Application for Involuntary Emergency Hospitalization for Mental Illness signed by a mental health provider. 345-64. Plaintiff was discharged on September 30, 2011 in stable condition with instructions to follow up with Tri-County Mental Health. Tr. 359, 364.

medium exertional level, with a specific vocational preparation ("SVP") of three, and DOT number 292.353-010. Tr. 72. He described Plaintiff's work as a forklift operator and truck unloader as semi-skilled, generally performed at the medium exertional level, SVP:3, and DOT number 921.683-050. *Id.*

> The ALJ posed the following hypothetical to the VE:
>
> [A]n individual of the approximate age, education, and past work experience as the claimant in this case, seeking employment, with the following limitations. Limited to simple, routine tasks, that do not require ongoing interaction with the general public, or close team-type interaction with coworkers; no lifting or carrying over 50 pounds occasionally, 25 pounds frequently; no more than frequent stooping, crawling, balancing, crouching, kneeling, or climbing of stairs or ramps; no more than occasional climbing of ladders, ropes, or scaffolds; and no more than frequent overhead reaching with the bilateral upper extremities, both arms.

Tr. 73. The ALJ asked if those restrictions would allow performance of Plaintiff's past work and the VE responded "[n]o," but he identified the following jobs that would accommodate those restrictions: laundry worker, medium exertional level, unskilled, SVP:2, DOT number 369.687-026, approximately 7,000 positions statewide, in excess of 280,000 positions nationally; dishwasher, medium exertional level, unskilled, SVP:2, DOT number 318.687-010, approximately 4,000 positions statewide, in excess of 155,000 positions nationally. Tr. 73-74.

Plaintiff's attorney asked if that work would be available if the individual "would need an unscheduled break, the duration would be one hour, in addition to the normal breaks, to take a nap," and the VE responded "certainly not." Tr. 74. The VE noted that the need to take a nap on a regular basis is not consistent with gainful employment and an extra hour-long break would be considered excessive. *Id.*

II. Discussion

    A.    The ALJ's Findings

In his November 9, 2012 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since November 18, 2010, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease, degenerative joint disease of the left shoulder, psychotic disorder, post traumatic stress disorder (PTSD), and panic disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404-1567(c) and 416.967(c) except he would be limited to simple, routine tasks that do not require interaction with the general public; no lifting or carrying over 50 pounds occasionally and 25 pounds frequently; no more than frequent stooping, crawling, crouching, kneeling, or climbing of stairs/ramps; no more than occasional climbing of ropes or scaffolds; and no more than frequent overhead reaching.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 26, 1952 and was 58 years old, which is defined as an individual closely approaching retirement age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

7

    10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from November 18, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 17-25.

### B. Legal Framework

#### 1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5)

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the

8

whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

---

Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C. Analysis

1. The ALJ's Assessment of Plaintiff's Impairments in Combination

Plaintiff's initial allegation of error is that "the ALJ did not analyze [Plaintiff's] impairments in combination in any fashion" and therefore remand is appropriate. Pl.'s Br. 9,

10

ECF No. 16. Plaintiff asserts that he "suffers from severe pain and mental impairments, which, taken together, further reduce his RFC [more] than either impairment might by itself." *Id.* The Commissioner asserts that "[t]here is no merit to Plaintiff's first contention that the ALJ did not consider Plaintiff's combination of impairments when determining his RFC." Def.'s Br. 13, ECF No. 18.

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Lemacks v. Astrue*, No. 8:07-2438-RBH-BHH, 2008 WL 2510087 (D.S.C. May 29, 2008), *aff'd*, 2008 WL 2510040 (D.S.C. June 18, 2008); *cf. Reid v. Commissioner*, 769 F.3d 861, 866 (4th Cir. 2014) (finding Commissioner adequately considered plaintiff's impairments in combination based on the ALJ's "meticulous[]" discussion of whether plaintiff's three severe impairments would equal a listed impairment) (quoting *Walker* requirement of adequately explaining combined effects of impairments). Even if the claimant's impairment or impairments in and of themselves are not "listed impairments" that are considered disabling per se, the Commissioner must also "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

Here, the ALJ determined that Plaintiff suffered from the severe impairments of cervical and lumbar degenerative disc disease, degenerative joint disease of the left shoulder, psychotic disorder, PTSD, and panic disorder. Tr. 17. At step three of his sequential evaluation, the ALJ

noted that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity" of a listed impairment. Tr. 18. The ALJ considered Plaintiff's "degenerative disc disease/degenerative joint disease of the lumbar and cervical spine" and found that it did not meet the requirements of Listing 1.04. *Id.* The ALJ then noted that the "severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03 and 12.06." *Id.*

The Commissioner argues that the "hypothetical question that the ALJ posed to the VE illustrates that the ALJ did, indeed, consider a combination of both Plaintiff's physical and mental impairments." Def.'s Br. 13. The undersigned disagrees. While the ALJ's hypothetical may address Plaintiff's limitations[4] it does not address the effect of his combined impairments. The law in the Fourth Circuit is clear: in-turn consideration of multiple impairments is insufficient. The underlying ALJ decision in *Walker* had included discussion of each of claimant's impairments separately, noting "the effect or noneffect of each." 889 F.2d at 49-50. The Fourth Circuit overturned those ALJ findings because, although the ALJ "discussed each of claimant's impairments[, he] failed to analyze the cumulative effect the impairments had on the claimant's ability to work." *Id.* at 50. Similarly, the ALJ's fragmented examination of Plaintiff's impairments in this matter is insufficient. The ALJ's declaration that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),

---

[4] The Commissioner asserts that the ALJ accounted for Plaintiff's psychological limitations "particularly his moderate limitation on concentration" by restricting Plaintiff to "simple, one or two step tasks. . . ." Def.'s Br. 13. The Fourth Circuit has recently held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). Accordingly, even if the undersigned were to agree that the hypothetical considered Plaintiff's impairments in combination, the ALJ's proposed limitations would still be insufficient.

404.1525, 404.1526, 416.920(d), 416.925, and 416.926[,]" Tr. 18, is insufficient under the law. *See Walker*, 889 F.2d at 50 (such a "finding in itself, however, is not sufficient to foreclose disability."). The ALJ should have included adequate explanation of his consideration of the combined effects of all of Plaintiff's impairments in his decision. *Walker*, 889 F.2d at 50.

Although the ALJ noted that the severity of Plaintiff's mental impairments "considered singly and in combination" did not meet a listing, Tr. 18, it is unclear if the ALJ compared only Plaintiff's various mental impairments or if he considered Plaintiff's mental impairments in combination with Plaintiff's physical impairments. In his RFC analysis the ALJ discussed and separately considered the effect of each of Plaintiff's impairments on Plaintiff's ability to work. For each impairment the ALJ examined relevant evidence including treatment history and Plaintiff's testimony. *See* Tr. 20-24. Nowhere, however, does the ALJ discuss how and whether he considered the combined cumulative effect of these limitations, and whether, together, the limitations rendered Plaintiff disabled. *See Walker*, 889 F.2d at 50 (holding ALJ must "adequately explain his or her evaluation of the combined effect of the impairments."). Therefore, it is recommended that the decision be remanded to the ALJ so that he can examine the combined effect of all of Plaintiff's impairments, physical and mental, and, in the decision on remand, explain his evaluation of the combined effect of Plaintiff's multiple impairments.

2.    The ALJ's RFC Analysis

Plaintiff also argues that RFC analysis "was not based on the proper legal framework insofar as he failed to address specific functions fairly at issue." Pl.'s Br. 9. As discussed above, the undersigned recommends the ALJ be instructed to revisit his evaluation of Plaintiff's combined physical and mental impairments. These additional considerations will impact the ALJ's determination of whether Plaintiff meets a Listing as well as the subsequent steps of the sequential process. Therefore, the undersigned cannot now determine whether the ALJ's RFC

13

analysis is supported by substantial evidence. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on a particular ground and declining to address claimant's additional arguments). Accordingly, the undersigned does not consider Plaintiff's remaining allegation of error at this time.[5]

III.     Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned cannot determine that the Commissioner's finding is supported by substantial evidence or is without legal error.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action as detailed within.

IT IS SO RECOMMENDED.

June 9, 2015                                                              Kaymani D. West
Florence, South Carolina                                         United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[5] If remanded in accordance with this Report and Recommendation, the Commissioner should be mindful of the Fourth Circuit Court of Appeals' discussion of function-by-function analyses in *Mascio*, 780 F.3d at 635-37.